TUCKER, P.
In the examination of this case, I think it unnecessary to advert to the bill of review which was offered and rejected, because the question whether the decree is erroneous on its face, is fairly presented by the appeal from that decree. It is proper also to dispose succinctly of some minor points which have been much insisted on in the argument, and have been deemed all-important by the respective counsel. It *has been contended that the arbitration bonds, as they are called, conclude all objection to the award of the commissioners. And so far as the administration account is concerned, that might safely be admitted ; for I think all parties are content with the report of 1390 dollars 95 cents as due from Thompson on that account, But the guardianship account formed no part of that reference. There does not appear to be any such order of reference, nor do the bonds make any allusion to such an account. And though it is contended that the charges for board &c. should be considered as distributions, and therefore as belonging to the administration account, yet such a course would not only be inconsistent with the principles laid down in Garrett &c. v. Carr &c., 3 Leigh 407, but it would lead to the absurdity of considering the defendant Thompson as making distribution after his powers were revoked ; for part of his charges are subsequent thereto. Ñor did Thompson himself ever consider his charges against the children as so much distributed ; as appears by his account as slated by the commissioners at his instance. I think, therefore, the guardianship account was coram non judice, and that it has not yet been settled, for commissioner Eadd was no more authorized to settle it than the former commissioners, and if he had been, he has merely taken their report (which was without authority) as the'foundation of his.
But admitting the gtiardian’s account to have been before the first commissioners, how have they settled it ? They have reported annual charges against the two boys, without one cent of credit for the profits of their estate. Either there were profits, or there were not. If there were, they should have been credited. If there were none, there could be no propriety in raising such an account for board and education against these youths. The law expressly provides (1 Rev. Code, ch. 108, § 25, p. 410,) that if an orphan hath no estate, or not sufficient 'x'for a maintenance out of its profits, he shall be apprenticed to learn a trade, or some occupation which will enable him to get an honest livelihood. What has been done with these boys 7 What education has been given them in return for absorbing the whole of their little property ? What occupation have they been brought up to, to fit them 1o struggle for themselves ? I see nothing. Eleven dollars seems to have been the cost of their instruction for one year, and their style of living appears to have corresponded. The account therefore seems to me inadmissible. The self-constituted guardian should be strictly confined to the profits of the estate, wherever it is so scanty. He should not be permitted to keep his wards idle and unemployed, and eating up their little patrimony, so that when they come of age their whole property goes into his hands for board, and they are turned adrift without a cent, and what is worse, without a trade or calling to support them. Were it otherwise, a small property would be worse than none. A penniless orphan stands a chance, by being bound out, to learn a trade and get the rudiments of education ; while the boy who has a pittance is kept at home in idleness, and his guardian swallows up the pittance in charges for board. In this case the boys, who were old enough in 1805, in their father’s lifetime, to be brought in to receive possession of two slaves, must soon have been able to get their own living, instead of spending what their father left. I am therefore of opinion that not a cent above the profits of the estate should have been allowed to their father in law, and the accounts should be «restated upon this principle.
As to the pretended gift of the slaves by Berryman Johnson to his sons, I am clearly of opinion it gave them no title. He did not intend they should have them till after his death, and such a gift in remainder cannot be made by parol. I am also of opinion that Anderson was answerable for them. They were in his possession, *and forcibly taken from him by the sons of the testator. He ought to have reclaimed them. But he not only failed to do this, but voluntarily afterwards delivered others to the sons. The abduction was in February, and the delivery to them of other slaves was in the May following. If therefore they have too many, he is clearly responsible, for he might at least have retained those he afterwards gave up, as an indemnity in part of those taken away.
It is objected, however, on the part of Anderson, that the attempt to charge him with these slaves is nowhere made in the pleadings. This is true, but it may and does result from the settlement of the administration account of Anderson, if, by the eloigning of the slaves through his fault, they cannot be had in specie. The demand against him must be for their value, which enters therefore properly into the account. But if this were not so, the pleadings may be amended, or a cross bill filed, on the going back of the cause.
Upon the whole, 1 think the decree should be reversed, arid the decree entered which has been prepared.
The decree of the court of appeals was as follows :
“The court is of opinion that although, as between Pulaski A. and David B. Johnson and the appellee, on a bill to resettle the administration account, it was competent to the latter to offset against the distributable *684 surplus (if any) in his hands due to them, such proper advances as he may have made for their support and education, not exceeding- the profits of their estate, yet it never could be competent to him to make such offset against the appellant, the personal repre-tative, or to recover any part of such advances out of the testator’s estate in his hands to be administered, if the portions of the said Pulaski and David had been fully satisfied by payments, or by the property forcibly taken by them. The court is further of opinion that the settlement of *the guardianship account by the county commissioners in the first instance, and afterwards by commissioner Dadd, was without authority, and therefore not binding, no order for such settlement having ever been made, and none such having been contemplated by the bonds of the parties: and further, that if regularly before the said commissioners, it is grossly erroneous on its face, as it presents very large debits against- the wards, without a single credit for profits of their estate; that if there were profits, they should have been credited ; and if none, the wards should have been bound out, instead of being incumbered at maturity with a heavy debt for the charges of their infancy. The court is further of opinion, that upon the present aspect of the case, the pretended gift of Berryman Johnson to his two sons is unsupported, and that the appellant is responsible on the settlement of his account, for the value of the slaves eloigned (except the slaves Jenny and Phil, whom the appellee is proved to have had sold under execution for his benefit), the said appellant having not only failed to reclaim them or their value, after they had been forcibly abducted, but moreover delivered others to them voluntarily, when they had already more than their share. The court is therefore of opinion that the said decree is erroneous, and that the same should be reversed ; that the account of advances by the appellee, the self-constituted guardian, should be referred to a commissioner, with instructions to allow no more for advances for the maintenance and education of the complainants, than the profits of their estate (exclusive of the increase of young negroes, which are not in this regard to be estimated as part of the annual profits) ; that the accounts of the administrator Anderson should be also recommitted for the purpose of ascertaining the distributable surplus, in which account should be charged the value of the slaves eloigned, except the slaves Jenny and Phil abovementioned, and if any balance should *appear to be due to the appellee in right of his wife as distributee, after charging him with the balance due on his administration account, and with what he has already received, a decree for the same against the appellant should be made; for, as against him, the appellee stands in the relation of a distributee seeking his portion of the residuum from the administrator, instead of being turned over to make reclamation from other legatees who are overpaid, or from wrongdoers who have carried off the estate. Therefore it is decreed and ordered that the said decree and order be reversed and annulled,” with costs to the appellant. And cause remanded to the circuit court, to be further proceeded in pursuant to the principles of the foregoing opinion and decree.